[No. B218946. Second Dist., Div. One. May 11, 2011.]

THE PEOPLE, Plaintiff and Respondent, v.
LARRY WADE BUTLER, Defendant and Appellant.

**[CERTIFIED FOR PARTIAL PUBLICATION*]**

---

*Pursuant to California Rules of Court, rules 8.1100 and 8.1110, this opinion is certified for publication with the exception of parts II., III., IV. and V.

COUNSEL

Lisa M. Bassis, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Pamela C. Hamanaka, Assistant Attorney General, Susan Sullivan Pithey and Taylor Nguyen, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

**ROTHSCHILD, J.**—In this case of first impression we hold that Penal Code section 550, subdivision (a)(2), making it a felony to fraudulently "present multiple claims for the same loss or injury, including presentation of multiple claims to more than one insurer," is not limited to the presentation of multiple claims to more than one insurer but also applies to the fraudulent presentation of multiple claims for the same loss or injury to one or more individuals whether or not they are insured for the loss or injury. Therefore, we affirm defendant's conviction under Penal Code section 550, subdivision (a)(2) for presenting multiple fraudulent claims for personal injury to the manufacturers of electric shavers. We also affirm defendant's convictions of theft and perjury and the imposition of a restitution fine. We modify the judgment by staying the sentence on the theft conviction under Penal Code section 654.

## FACTS AND PROCEEDINGS BELOW

Between November 2007 and August 2008, defendant Larry Wade Butler filed four small claims actions against the manufacturers of electric razors. In each case he falsely claimed that the manufacturer's razor caused injuries to his face.

In the first case, filed in November 2007, Butler claimed his face was injured when he shaved with a Gillette electric razor. Butler sent Gillette photographs of his face and a statement from a dermatologist regarding the cost of treating Butler's skin. Rather than contest Butler's action, Gillette settled the case for the sum of $4,700. It sent Butler a check in that amount which he cashed.

Butler next filed a small claims action against Phillips Electronics in January 2008. In his complaint he alleged he purchased a Phillips electric razor that caused scars to his face. Butler sent a letter to Phillips containing the same allegations and documents from the same dermatologist showing that the cost of Butler's proposed medical treatment would exceed $5,000, the jurisdictional limit of the small claims court at the time. Timothy Windham, the attorney who represented Phillips in the matter, explained that claims the size of Butler's were not turned over to Phillips's insurance carrier but handled by Phillips in-house or through a third party administrator. In this case, the third party administrator retained Windham's firm to handle Butler's claim. Based on the complaint and other documents Phillips instructed Windham to negotiate a settlement with Butler. The matter was settled for the sum of $4,800. Butler was handed a check in that amount at Windham's office.

In April 2008, Butler filed a small claims action alleging he sustained injuries after he purchased and used an electric razor manufactured by Schick. Again Butler sent the company photographs of his alleged injuries and copies of the documents from the dermatologist. Butler subsequently withdrew this action.

Finally, in May 2008, Butler filed a small claims action against Panasonic. His complaint alleged the same facial injuries as in the previous suits and claimed these injuries resulted from his use of a Panasonic electric razor. Panasonic did not settle this lawsuit because its attorney discovered, from talking to insurance adjusters for other companies, that Butler had made the same claims against their insureds. When Panasonic's attorney confronted Butler with this information, Butler stated that he had made the previous claims because he was unsure who had manufactured the razor that caused him injury but once he discovered that the razor was manufactured by

Panasonic he dismissed the other complaints. Panasonic's attorney testified that he was prepared to show documents in the small claims action establishing that Butler dismissed the prior lawsuits only after he received monetary settlements from the manufacturers. Butler, however, failed to appear for trial of the Panasonic suit and the court dismissed it.

A jury convicted Butler of one count of fraudulently presenting multiple claims for the same loss in violation of Penal Code section 550, subdivision (a)(2), one count of theft of personal property and three counts of perjury.[1] The jury also found Butler had been convicted of a prior "strike" offense under the "Three Strikes" law and suffered three prior prison terms. The court sentenced Butler to a total prison term of 14 years four months. Butler filed a timely appeal.

## DISCUSSION

### I. *Fraudulently Presenting Multiple Claims for the Same Loss or Injury*

The jury convicted Butler of violating Penal Code section 550, subdivision (a) which states: "It is unlawful to do any of the following, or to aid, abet, solicit, or conspire with any person to do any of the following: [¶] . . . [¶] (2) Knowingly present multiple claims for the same loss or injury, including presentation of multiple claims to more than one insurer, with an intent to defraud."

In his brief on appeal, Butler concedes that the evidence is sufficient to prove that he presented multiple claims for the same injury (facial scarring) to several manufacturers of electric razors fraudulently claiming that each of their products was the sole and exclusive cause of his injury. Butler maintains, however, that since the statute specifically refers to the presentation of fraudulent claims for the same loss or injury to more than one *insurer*, and he presented his claims to multiple *manufacturers*, he could not, as a matter of law, have violated the statute. We reject Butler's argument because it contradicts the plain language of the statute. Although resort to legislative history is unnecessary, that history is consistant with the statute's plain language.

The plain language of the statute does not require the fraudulent claims to be presented to more than one insurer. It states only that a violation of the statute *includes* the fraudulent presentation of multiple claims to more than one insurer. Thus, on its face, the statute applies to fraudulent claims presented directly to the alleged tortfeasors as occurred in this case.

---

[1] Butler does not challenge his perjury convictions.

The statute's legislative history confirms that it was not intended to be limited to claims made to insurers.

In 1935 the Legislature established the Insurance Code and provided in section 556 of the code that: "It is unlawful to: [¶] (a) Present or cause to be presented any false or fraudulent claim for the payment of a loss under a contract of insurance." (Stats. 1935, ch. 145, § 556(a), p. 511.) Insurance Code former section 556 did not require that the fraudulent claim be presented to an insurer, only that the alleged loss be covered "under a contract of insurance."

Insurance Code former section 556, subdivision (a) remained unchanged until 1986 when it was amended to read: "It is unlawful to: [¶] (1) Knowingly present or cause to be presented any false or fraudulent claim for the payment of a loss, *including payment of a loss under a contract of insurance.* [¶] (2) Knowingly present multiple claims for the same loss or injury, *including presentation of multiple claims to more than one insurer*, with an intent to defraud." (Stats. 1986, ch. 1324, § 1, p. 4675, italics added.) The 1986 amendment was suggested by the Attorney General who explained: "Such amendments to subsections (a)(1) and (2) would proscribe presentation of false or fraudulent claims to insurance companies *or to individuals*. It would also proscribe presentation of multiple claims *to individuals*, to insurance companies, or to individuals and insurance companies, with the intent to defraud."[2] California courts have long construed the word "individual" to include a corporation. (*Cruze v. National Psychiatric Services, Inc.* (2003) 105 Cal.App.4th 48, 55 [129 Cal.Rptr.2d 65].)

The amended statute made it a crime to present false claims of injury to one or more individuals regardless of whether those claims were covered by a "contract of insurance" and regardless of whether the individuals chose to submit the claims to their insurers. The effect of this amendment is illustrated by the facts regarding Butler's fraudulent claim to Phillips. It is Phillips's practice not to purchase insurance against small claims such as the one by Butler but to handle those claims itself. The fraud Butler perpetrated on Phillips would not have been punishable under the original version of Insurance Code former section 556 which required that the claim be "for the payment of a loss under a contract of insurance." The fraud, however, would have been punishable under the 1986 amendment to the statute making it a crime to "present multiple claims for the same loss or injury" because the statute no longer required that the loss be covered by insurance. The

---

[2] Allen Sumner, Senior Assistant Attorney General, letter to Assemblywoman Maxine Waters, sponsor of the legislation, regarding Assembly Bill No. 710 (1985–1986 Reg. Sess.) May 24, 1985.

amendment recognized that fraud is still fraud whether the individual is partly or wholly self-insured or whether the individual chooses not to submit the claim to its insurer.

In 1989, Insurance Code section 556 was repealed (Stats. 1989, ch. 1119, § 1, p. 4130) and subdivision (a)(1) and (2) of that section was reenacted verbatim as Insurance Code section 1871.1, subdivision (a)(1) and (2). In 1992, that section was repealed and reenacted verbatim as Penal Code section 550. (Stats. 1992, ch. 675, § 8, p. 2896.) The California Highway Patrol, which supported this move, explained that "[t]he consolidation of punitive statutes relating to insurance fraud into one code will assist insurance fraud investigators and the criminal justice system in enforcing the applicable statutes."[3]

Butler contends the court in *State of California ex rel. Nee v. Unumprovident Corp.* (2006) 140 Cal.App.4th 442, 447, 450 [44 Cal.Rptr.3d 491] (*Nee*) interpreted Penal Code section 550 as applying only to fraudulent claims made to insurance companies. He is mistaken.

In *Nee* the plaintiff brought a qui tam action on behalf of the state under Insurance Code section 1871.7, subdivision (e)(1) which provides that "[a]ny interested persons, including an insurer, may bring a civil action for violation of this section for the person and for the State of California." Section 1871.7 is violated by "[e]very person" who violates Penal Code section 550. (§ 1871.7, subd. (b).) The plaintiff alleged that the defendant insurance company violated section 1871.7 by making false and misleading statements in the marketing of disability insurance and in connection with claims for payments or other benefits pursuant to those policies. (*Nee, supra,* 140 Cal.App.4th at p. 445.) Among the issues in *Nee* was whether the defendant insurance company could be held liable under section 1871.7, subdivision (b) for violating Penal Code section 550's prohibition on making fraudulent claims. The court held that despite the reference to "every person" in section 1871.7, subdivision (b) the insurer could not be liable for violating Penal Code section 550 because "plaintiff's allegations of insurer misconduct do not include the presentation of false or fraudulent claims . . . ." (140 Cal.App.4th at p. 450.) In dictum the court stated that Penal Code section 550 "criminal-ize[s] the making of false or fraudulent claims *to* insurers" not the making of false or fraudulent claims *by* insurers. (140 Cal.App.4th at p. 447, italics added.) The court repeated this dictum later noting that "the class of persons who violate [Penal Code section 550] are those who submit false or fraudulent claims to insurers." (*Id.* at p. 450, fn. omitted.) The court was not asked, and did not decide, whether the only class of persons who can violate Penal

---

[3] California Highway Patrol, Enrolled Bill Report on Bill No. 3067 (1991–1992 Reg. Sess.) August 31, 1992.

Code section 550 are those who submit fraudulent claims to insurers. For the reasons we explained above, we conclude the class is not so limited.

II.–V.[*]

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

## DISPOSITION

The convictions and the restitution fine are affirmed. The judgment is modified to stay the imposition of sentence on the theft conviction and the trial court is directed to prepare a corrected abstract of judgment and forward it to the Department of Corrections and Rehabilitation.

Mallano, P. J., and Johnson, J., concurred.

A petition for a rehearing was denied June 7, 2011, and the opinion was modified to read as printed above. Appellant's petition for review by the Supreme Court was denied September 14, 2011, S194486.

---

[*]See footnote, *ante,* page 535.