Filed 3/18/22; Certified for Publication 4/11/22 (order attached)

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

|  |  |
|---|---|
| THE PEOPLE ex rel. GILBERT ELLINGER,<br><br>    Plaintiff and Appellant,<br><br>v.<br><br>STEPHANIE ANN MAGILL et al.,<br><br>    Defendants and Respondents. | E076378<br><br>(Super.Ct.No. PSC1908114)<br><br>OPINION |

APPEAL from the Superior Court of Riverside County.  Kira L. Klatchko, Judge. Affirmed.

English Lloyd & Armenta and Juan M. Armenta for Plaintiff and Appellant.

London Fischer, Richard S. Endres and Patrick G. Bollig for Defendants and Respondents Stefanie Ann Magill and ESIS, Inc.

Cozen O'Connor, Maria Louise Cousineau and Mark A. Talise for Defendant and Respondent Zurich American Insurance Company.

1

In this qui tam action, relator Gilbert Ellinger brought suit on behalf of the People of the State of California against Zurich American Insurance Company (Zurich), ESIS, Inc. (ESIS), and Stephanie Ann Magill under Insurance Code section 1871.7, a provision of the Insurance Frauds Prevention Act (IFPA). (Undesignated statutory references are to the Insurance Code.) The trial court sustained defendants' demurrers without leave to amend. Ellinger appeals from the judgment. We affirm.

BACKGROUND

The following factual summary is drawn from the allegations of the qui tam action that Ellinger filed in November 2019 against Zurich, ESIS, and Magill. In January 2016, Ellinger injured his back while working, and he immediately informed his supervisor. The following month, Ellinger reported to his employer's human resources manager that he had sustained a work-related injury and had told his supervisor about it. The human resources manager created a "time line memorandum" summarizing the conversations she had with Ellinger about the injury. She placed the memorandum in Ellinger's personnel file.

Ellinger filed a workers' compensation claim based on the injury. Zurich was the workers' compensation insurance carrier for Ellinger's employer, and ESIS was Zurich's claims administrator. Magill worked as a senior claims examiner for ESIS and was the adjuster assigned to investigate Ellinger's claim.

ESIS denied Ellinger's claim on an unspecified date. Magill later testified that she denied the claim because of an April 2016 written statement from Ellinger's supervisor in which the supervisor claimed that Ellinger had not reported the injury to him.

2

When the human resources manager was deposed in November 2016, she produced the time line memorandum, which Ellinger's counsel in the workers' compensation action did not know about until then. Nearly eight months after that disclosure, in July 2017, ESIS reversed its denial of the claim and stipulated that Ellinger was injured while working, as he had alleged.

When Magill was deposed in September 2018 in an unspecified proceeding, she testified that she was unaware of the time line memorandum. Magill believed that the memorandum would have been useful in her investigation of Ellinger's claim because it tended to corroborate his claim and to discredit his supervisor's denial that he had been told about the injury. Contrary to Magill's testimony, her email messages show that the human resources manager had emailed Magill the time line memorandum in March and April 2016, and Magill thanked the manager for sending it.

Ellinger alleged that Magill's concealment of or failure to disclose the time line memorandum violated Penal Code section 550, subdivision (b)(1) to (3). On the basis of those alleged violations, Ellinger alleged that defendants were liable under section 1871.7. Against each defendant, Ellington sought a civil penalty and an assessment of no greater than three times the amount of his workers' compensation claim.

Defendants filed demurrers. They argued that insurers and their agents, such as a claims administration company and a claims adjuster, could not be held liable in a qui tam action under section 1871.7.

The trial court sustained defendants' demurrers without leave to amend. It concluded that defendants could not be held liable under section 1871.7 for any failures

3

of Magill in the claims handling or review process. The court found persuasive *State of California ex rel. Nee v. Unumprovident Corp.* (2006) 140 Cal.App.4th 442, 450 (*Nee*) and *State of California ex rel. Metz v. Farmers Group, Inc*. (2007) 156 Cal.App.4th 1063, 1066 (*Metz*) and concluded that insurance carriers are not subject to liability under the IFPA for claims handling practices.

## DISCUSSION

"We independently review the ruling on a demurrer and determine de novo whether the complaint alleges facts sufficient to state a cause of action." (*Fremont Indemnity Co. v. Fremont General Corp.* (2007) 148 Cal.App.4th 97, 111.) "We assume the truth of the properly pleaded factual allegations, facts that reasonably can be inferred from those expressly pleaded, and matters of which judicial notice has been taken." (*Ibid.*)

Ellinger argues that the trial court erred by concluding that insurers and their agents cannot be liable under the IFPA for claims handling practices. He contends that strong policy considerations support holding insurers liable under the IFPA and that he has properly alleged a cause of action under the IFPA. We are not persuaded.

I.     *Legal Background*

The legislative findings and declarations concerning the IFPA begin as follows: "The business of insurance involves many transactions that have the potential for abuse and illegal activities. . . . This chapter is intended to permit the full utilization of the expertise of the commissioner and the department so that they may more effectively investigate and discover insurance frauds, halt fraudulent activities, and assist and receive

4

assistance from federal, state, local, and administrative law enforcement agencies in the prosecution of persons who are parties in insurance frauds." (§ 1871, subd. (a).) The findings and declarations go on to describe various types of insurance fraud, including automobile insurance fraud, workers' compensation fraud, and health insurance fraud. (*Id.*, subds. (b)-(h); *Nee*, *supra*, 140 Cal.App.4th at p. 448.) Concerning workers' compensation, the Legislature found: "Workers' compensation fraud harms employers by contributing to the increasingly high cost of workers' compensation insurance and self-insurance and harms employees by undermining the perceived legitimacy of all workers' compensation claims." (§ 1871, subd. (d).)

We agree with other courts' interpretation of those legislative findings: "The clear import of the legislation is to reduce fraud against insurers in order to benefit policyholders." (*Nee*, *supra*, 140 Cal.App.4th at p. 448; see also *State ex rel. Aetna Health of California, Inc. v. Pain Management Specialist Medical Group* (2020) 58 Cal.App.5th 1064, 1069 (*Aetna*) ["The Legislature enacted the IFPA to combat insurance fraud committed against insurers by individuals, organizations, and companies"].) Notably, the IFPA's legislative findings make "no mention of a problem with insurance claims handling practices." (*Nee*, at p. 448; § 1871.)

Section 1871.7 of the IFPA provides that any interested person may bring a qui tam action to recover penalties, damages, and other relief for certain deceptive acts directed at insurers. (§ 1871.7, subd. (e)(1); *Aetna*, *supra*, 58 Cal.App.5th at p. 1069.) The penalties are "assessed for each fraudulent claim presented to an insurance company by a defendant and not for each violation." (§ 1871.7, subd. (b).)

5

Prohibited conduct in support of or in opposition to an insurance claim is actionable. (*People ex rel. Alzayat v. Hebb* (2017) 18 Cal.App.5th 801, 816; see also *Nee*, *supra*, 140 Cal.App.4th at pp. 450-451.) Some kinds of actionable conduct are described in section 1871.7 itself (§ 1871.7, subd. (a)), while other kinds are identified by incorporation of separate statutes (*id.*, subd. (b)).

One such statute is Penal Code section 550, which criminalizes a broad range of deceptive acts in connection with making, supporting, or opposing claims for payment, including but not limited to insurance claims. (Pen. Code, § 550, subds. (a), (b).) Thus, some but not all violations of Penal Code section 550 can serve as the basis for a section 1871.7 action, because section 1871.7 concerns only claims presented to insurance companies and Penal Code section 550 is not so limited.

*Nee*, *supra*, 140 Cal.App.4th 442 and *Metz*, *supra*, 156 Cal.App.4th 1063 held that liability under section 1871.7 does not extend to insurers and their agents based on claims handling practices. (*Nee*, at p. 451; *Metz*, at pp. 1068-1070.) *Nee* explained that this conclusion is consistent with the IFPA's purpose of "preventing and punishing the making of fraudulent claims to insurance companies"; the statute does not target the conduct of insurance companies themselves. (*Nee*, at p. 449.)

II.    *Ellinger's Arguments*

Ellinger argues that the trial court erred by concluding that defendants could not be held liable under section 1871.7 for Magill's alleged mishandling of his claim. Ellinger contends that the trial court erred by relying on *Nee*, *supra*, 140 Cal.App.4th 442 and *Metz*, *supra*, 156 Cal.App.4th 1063 in concluding that the IFPA does not impose

liability on insurers based on such practices. He contends that *Nee* and *Metz* involved only general claims handling practices and not allegations related to the mishandling of a specific claim. The argument lacks merit. Contrary to Ellinger's characterization, *Metz* involved a specific automobile insurance claim in which the relator alleged that several named insurance companies and their agents had made false or misleading statements about the settlement of the relator's claim. (*Metz*, at pp. 1065, fn. 1, & 1067.) *Metz* followed *Nee* and concluded that the insurers' alleged misconduct in handling a specific claim was not subject to liability under the IFPA because insurers and their agents are not proper defendants under section 1871.7. (*Metz*, at pp. 1068-1070.)

Ellinger next argues that *People v. Butler* (2011) 195 Cal.App.4th 535 (*Butler*), supports his position because it explains that *Nee* and *Metz* did not hold that "only those who make claims can be liable under the IFPA." The argument fails because Ellinger's description of *Butler* is incorrect.

In *Butler*, the defendant was convicted of making false claims to manufacturers, not to insurers. (*Butler*, *supra*, 195 Cal.App.4th at pp. 537-538.) *Butler* held that violations of Penal Code section 550 are not limited to claims made to insurers. (*Butler*, at p. 538.)

*Butler* thus provides no support for Ellinger's contention that insurers and their agents can be sued under the IFPA. *Butler* does not say anything about that issue. Rather, *Butler* merely confirms that a violation of Penal Code section 550 need not involve an insurance claim at all. (*Butler*, *supra*, 195 Cal.App.4th at p. 538.)

7

Moreover, contrary to Ellinger's argument, *Butler supra*, 195 Cal.App.4th 535 did not undermine the holdings in *Nee*, *supra*,140 Cal.App.4th 442 and *Metz*, *supra*, 156 Cal.App.4th 1063 that insurers and their agents are not proper defendants under the IFPA. *Butler* involved criminal violations of Penal Code section 550 and not liability under the IFPA. *Butler* correctly explained that *Nee* did not stand for the proposition that "the only class of persons who can violate Penal Code section 550 are those who submit fraudulent claims to insurers." (*Butler*, at pp. 540-541.) That does not cast any doubt on *Nee*'s holding that insurers and their agents are not proper defendants under the IFPA. (*Nee*, at p. 451.)

Ellinger next argues that he properly pleaded violations of Penal Code section 550, subdivision (b)(1) to (3), based on Magill's alleged conduct in handling his claim, so he therefore properly seeks relief under section 1871.7. The argument fails for two reasons. First, as we have explained, not every violation of Penal Code section 550 is actionable under section 1871.7. Second, Ellinger's contention that he has properly pleaded a violation of Penal Code section 550 is based on a mischaracterization of the record. In his opening brief, he asserts that "[t]he denial [of his workers' compensation claim] was reversed after Magill's deposition," in which Magill claimed not to have known about the time line memorandum before the human resources' manager's deposition. Ellinger in fact alleged that ESIS reversed the denial of his claim in July 2017—more than one year before Magill's deposition. Ellinger does not explain how Magill's alleged lie at her deposition in September 2018 could have affected the handling of his claim, given that the denial of his claim had already been reversed in July 2017.

Finally, Ellinger argues that affirming the trial court order sustaining the demurrers is against public policy, as it "would tacitly approve of insurance company fraud." We disagree. First, Ellinger has not sufficiently alleged a violation of Penal Code section 550 and thus has not properly alleged that defendants committed any kind of fraud. Second, excluding insurers and their agents from liability under section 1871.7 does not "tacitly approve of insurance company fraud" or otherwise entail that insurers and their agents can commit fraud with impunity. It means only that insurers and their agents cannot be sued under the IFPA. That holding is not surprising, because the IFPA expressly targets only deceptive conduct directed at insurers, not improper conduct by insurers. (See § 1871.)

For all of these reasons, we conclude that the trial court did not err by sustaining defendants' demurrers without leave to amend.

DISPOSITION

The judgment is affirmed. Defendants shall recover their costs of appeal.

MENETREZ            <br>
J.

We concur:

McKINSTER           
            Acting P. J.
RAPHAEL             
            J.

**CERTIFIED FOR PUBLICATION**

**IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA**

**FOURTH APPELLATE DISTRICT**

**DIVISION TWO**

| | |
|---|---|
| THE PEOPLE ex rel. GILBERT ELLINGER,<br><br>        Plaintiff and Appellant,<br><br>v.<br><br>STEPHANIE ANN MAGILL et al.,<br><br>        Defendants and Respondents. | E076378<br><br>(Super.Ct.No. PSC1908114)<br><br>ORDER CERTIFYING OPINION FOR PUBLICATION |

THE COURT:

We have received two requests pursuant to California Rules of Court, rule 8.1120(a), to publish the nonpublished opinion in this matter that was filed on March 18, 2022. Having reviewed those requests, we conclude that the opinion meets the standards for publication set forth in California Rules of Court, rule 8.1105(c).

We therefore grant the requests and order that this opinion be certified for publication pursuant to California Rules of Court, rule 8.1105(b). We consequently certify for publication the opinion filed in this matter on March 18, 2022.

        CERTIFIED FOR PUBLICATION

                                                                MENETREZ
                                                                                        J.

We concur:

McKINSTER
                Acting P. J.
RAPHAEL
                        J.